et al., oral argument, 15 minutes per side. Mr. Huffman for the appellant. Thank you, Your Honor. I would like to reserve five minutes of the time allotted to me for rebuttal. First of all, thank you for filing supplemental briefs on the issue of subject matter jurisdiction. And because the panel does have a question of our jurisdiction, we would appreciate if you'd please argue the issue of jurisdiction along with the issues on appeal. Very well. Your Honor, this case is about, and primarily was before I got involved, the question of whether or not the district court in Toledo, the Northern District of Ohio Western Division, had subject matter jurisdiction to proceed after the ERISA claim, which was the sole federal issue in the case, whether or not they had supplemental jurisdiction to continue. Well, isn't jurisdiction determined at the time of removal, though, rather than the time of dismissal? It is, and it was determined because, and solely because of the ERISA claim, it was determined the federal court had jurisdiction. That's the time we look at it. Yes, sir. And it was at that time. But of course, the trial court dismissed the ERISA claim on a motion for summary judgment, and upon dismissing it, then had to determine whether or not it had supplemental jurisdiction to then hear those state court claims. I'm confused. I thought you just agreed with Judge Griffin that the point at which we determine whether there's supplemental jurisdiction over the state claims is the time it was removed, right? That's true initially, but when things change, and according to the Musson case from this circuit court, there is a presumption that once all federal claims are resolved, that it should be returned to the state court. I'm sorry, Judge. I'm sorry. There are two issues. One is, was there supplemental jurisdiction? And the second is, did the court abuse its There are. And there was no question that it needed to be removed from the Hardin County Common Police Court when the defendant filed the motion to remove. But when, and I guess the question is whether or not the district court abused its discretion by continuing to hold on to it. Okay. How about the first question? All right. Do you have anything to say about the first question? Whether the court had supplemental jurisdiction over those state claims by virtue of the ERISA claim? Yes, it did. It did? Okay. Yes. Sorry to interrupt. What's the reason for that? Because the ERISA claim was part of the original case. And for that reason... So at the time of removal, we simply look at, is there one valid federal claim? Is that the way we look at it? That's the way I look at it. Now, to go on and whether or not there's supplemental jurisdiction, the district court had to determine that the operative facts in those state court claims and the one federal claim were interwoven or one and the same or arrived out of a nucleus of facts. Does he do that at the time of removal or as things go along? The reason I'm asking that is if you strictly look at it as at the time of removal, you would think there would be a lot of law where at the time of removal, people make motions saying, well, yes, your honor, you can keep this claim, but you can't keep the other claims. But I didn't see that in my research. Do you have any view on that? I did not. All of the law about whether or not the district court should have retained the supplemental jurisdiction is after the fact. For instance, the Musson case from this time, a case which we also cited in the brief. And if you do have to determine it originally, should the district court have determined in the beginning that the supplemental jurisdiction wasn't there? Probably. And was there an abuse of discretion? I don't know that it's an abuse of discretion, but I believe the district court was simply wrong in determining that there was a nucleus of operative facts that allowed him to hear both cases. In the complaint that was filed, the verified complaint that was filed, which of course is copious and includes all sorts of complaints, all sorts of facts, there's one paragraph in there, a RISA claim. And that's against Ohio Northern as the administrator of the retirement plan. The defendant, Veltri, which is the only claim left here and which should have been, in our opinion, should have been sent back to the Hardin County Common Police Court after the RISA case, that defendant, Veltri, had nothing to do with the RISA claim. He wasn't in charge of administering the retirement plan. He wasn't part of the administration of the university. He was an associate dean. But the claims against Veltri specifically and only have solely to do with a person-to-person assault and battery claim. In the initial complaint, I think there were some allegations in the retaliation complaint that one of the ways they retaliated was not giving him his RISA benefits? There are a lot of unfounded, frankly emotional, a dissertation of facts. The first three pages of that verified complaint basically are a laundry list of complaints he has with everybody at Ohio Northern. And those are mingled up in there. And the fact that they're all mangled up into two or three pages of facts does not mean that all the claims come from the same nucleus of facts. Certainly the plaintiff, who had a lot to say about the complaint being filed, when he asked Mr. Alastra to sign the point, he wanted all of that in there. A lot of good lawyers, myself included, would have said, no, we don't need all those facts. But reciting them all together by a plaintiff and a lawyer who yields to the plaintiff's desire to vent all of his frustrations doesn't make them interwoven into an operative set of facts at the nucleus of both those cases. The evil of the RISA, allegedly, do I read it right from the complaint that that happened as a result of things that Ohio Northern did before 2010? Yes. Before the IRS ruling? Yes. And then what's the date of the alleged assault and 2013, simply to preserve the statute and immediately after being filed in Hardin County was dismissed and under our savings statute in the state court in Ohio, the plaintiff was able to refile it and that's the verified complaint you have, is where all of that's put on there because the state court claims had been reserved by the savings statute. Besides the jurisdictional issue, which I believe, of course, is dispositive because despite some of the arguments of Applee, you can't waive subject matter jurisdiction any more than you can waive a number of bedrock principles in litigation. And this Musson case from this court indicates that the preference is for the district court, the trial level courts, to send it back to state court. And that's the favored presumption. That's what should be done unless, and under the statute, under 1367, under supplemental jurisdiction, the district court may decline, may decline to exercise jurisdiction under Subsection 8 if the claim raises a novel or complex issue of state law. Well, there's no novel or complex issue of the state law. It's pretty simple, assault and battery. And, of course, in the assault and battery case, no facts, no testimony, nothing in the case was talked about with respect to the ERISA case. The fundamental issue, of course, before we were asked to brief the jurisdictional issue, is the fundamental right to counsel in this case. That issue was important and we led with, and we talked about, as I said in our supplemental brief, I led with that because I thought, frankly, we were somewhat precluded by the statement of issues and parties that the pro se appellant had filed with this court. So I went with that. And, of course, the Anderson v. Shepard case is, that's the law in the Sixth Circuit, and, of course, everyone else files it. I note that the facts in this case, as far as whether or not Gerber should have been allowed to retain an attorney, not have one appointed to him, is very clear in Anderson. The facts there are better than they were for Mr. Anderson, whose problem for Mr. Anderson was that he fired two attorneys, both of whom wanted him to settle the case. And the discussion by the district court judge there indicates that that somebody would say what he wanted to hear. We don't have that in this case. In this case, Judge Zuhari, and knowing as I do, having had a couple cases before him, he's very proactive on trying to settle cases. And when this case couldn't get settled, the record will show there was never any offer of settlement to the plaintiff, Scott Gerber. When this case couldn't get settled, I believe Judge Zuhari decided that no one else should have to do this all over again. He's not willing to send it to another judge, have somebody else do it. But in the process, he either didn't think far enough or confused, interwoven, if you like, the question of having a right to retain private counsel in a civil case. And, of course, you do not have the right to have private counsel appointed for you in a civil case, as Judge Boggs pointed out in his dissent of the case. I noticed a major objection in his dissent that Judge Boggs had was, in his dissenting opinion, I noticed the first five-eighths of his dissent were basically about are we going to let people just keep firing attorneys and keep this going, and we shouldn't put our judgment in place of the district judge about whether or not he should get an attorney. But even so, in his dissent, Judge Boggs pointed out that the issue here is the right to have private counsel to retain it, not to have it appointed. And I think the district court in this case looked over that and just said you don't have a right to trial in a civil case. That's fundamentally wrong under Anderson v. Shepard. This goes to your issue of an alleged abuse of discretion and failing to grant a continuance? Yes, sir. All right. But Judge Akari was quite specific that he denied the motion for the continuance. However, he said if, however, you retain an attorney, he files a motion and establishes reasons for that motion, I'll reconsider it. Yes, sir. Did he not? That is correct. Does that distinguish this case from Anderson? No, it doesn't. And here's the reason why, Your Honor. At the time of when the trial began, my client, the plaintiff, Mr. Gerber, had retained an attorney to start the trial, Tom Piggott. Tom Piggott had a seizure on the second day of the trial. That was in January of 2016. And incidentally, that trial date, at a closed hearing in November, Judge Akari moved the trial date up from March of 2016 to January of 2016 for reasons that aren't clear. Tom Piggott entered an appearance. I'm here. And the first thing Tom Piggott did is say, Judge, could I have a continuance of this? He says, nope, everything's there. You should be able to go on this case. That's fine. Well, not that it was connected, but Tom Piggott had a seizure and wanted to continue representing Scott Gerber. Well, that discussion, isn't it, was he said, was that motion on the record, and Piggott says, well, I made an oral motion, and they sort of fuss-fussed a little. Oral motion about the continuance? About Piggott's continuance. We're not relying particularly on that, whether he did. The point is, he went and had entered the trial. And between January and March, when the trial date had been set, Piggott was hoping to recover enough to finish the thing. But a week or so before, he found, I can't do it. I can't do it health-wise. They have the hearing in March. Scott Gerber says, I need a lawyer. And I think anybody looking at the record knows that Scott Gerber needs a lawyer and needs one that tells him, yes, we'll do this and we won't do that. Nonetheless, the judge did, as you pointed out, Judge Griffin, Judge Zuhari did say, have them file a motion and I'll talk to him about a continuance. Well, Scott Gerber did find an attorney, as a matter of fact, an attorney who had represented someone against Ohio Northern in another case. And that lawyer in the Toledo area knew that Tom Piggott had entered an appearance, asked for a continuance, and been denied. And she told, and it's on the record, where Gerber says, Judge, she does not want to enter an Now, that's exactly what, well, whether it's on the record or not, she knew, if I enter an appearance, I'm stuck. And I don't want to get stuck unless I have time to prepare. And that's the fundamental difference. And that's why it's really... The exchange between Gerber and the judge? I believe it's in the record. Is this, I mean, I was looking for that myself. There's a conference on April 6th, which I think is by telephone. Correct. And that was what I, because I was thinking that I had just thought of this kind of an objection, and I did not immediately see it in the record, although I can look, because you would think if that objection was made, that then Judge Zuhairi would respond to it in some way, either saying, if I deny it, I'll let her out, or tough, she takes her chances. He would have said something. Now, maybe I'm missing it, but I thought I had looked for that in the record. But that issue is in his decision about the hearing on April 6th. And the judge has, the order the judge had where he described all that and said, that's in the record, and it's in the judge's decision in April, which is, have her file an appearance, and I will talk to her about whether or not there's a continuance. The case was set for trial May 3rd. April 6th, they have the hearing, and Judge Zuhairi's decision on that very question, I was reading that right before we started here, I know that, so that question that, have your attorney file an appearance, and I'll talk to her about a continuance. That's clearly on the record and part of the court's April decision. That part I understand. It's the part about, did they say, but your honor, the lawyer doesn't want to do it, because then they would be unethically required to go through with the trial, even if they weren't ready. The plaintiff, pro se, does make that suggestion to the court in argument in that hearing, and that's in the record. I'll look for it then. Any further questions at this time, you'll have your five minutes rebuttal, Mr. Hoffman. Thank you very much. Good afternoon. Good afternoon. Thank you, your honors. My name is Connor Kinsey. I'm the attorney for Steve Veltri. May it please the court. I would first like to address this supplemental jurisdiction issue, then discuss the motion for continuance, then Mr. Gerber's motion for recusal, and finally, if time permitting, get into the actual substance of the assault and battery claims against my client. To give you, I guess, a little bit of a road map regarding jurisdiction, as I understand, the specific question raised by this court in requesting the supplemental briefs, the common nucleus of operative fact, that that, of course, is the Gibbs test, which more or less applies to 28 U.S.C. 1367, subsection A, which is the initial determination at the time of removal that needs to be made by the trial court, is whether or not this entire laundry list of claims that has come before this court share enough of a common nucleus that it would be logical, and the plaintiff would expect, that all of these claims would be resolved as the same cause of action. That was absolutely the case here. Judge Zuhari made that determination at the time of removal, correctly applied the Gibbs test, later, after disposing of the ERISA claim, was nice enough to delineate his thought process there, and again, as Mr. Huffman has stated, and to a certain extent, verified, that that complaint, which was the sole document in front of Judge Zuhari at the time of removal, is a comprehensive laundry list of employment-related claims. Okay, it may be, but count 7 is the count for ERISA, and count 7 is all about the actions of Ohio Northern that predate the assault and battery, and I think it's also significant there's not an ERISA retaliation claim. He doesn't allege in count 7 that he was denied ERISA benefits because he filed a claim about the assault and battery. If you look at the paragraphs 84 through 90, it has nothing to do with the assault and battery, and therefore it's hard for me to see a common nucleus of facts that relate to count 7. I mean, tell me where it is. Correct, Your Honor. There are a number of different instances that we've highlighted in the brief that they're within the retaliation. There is no ERISA retaliation claim in the complaint. Do you agree with that? I agree with that. There's no ERISA retaliation claim. However, there is a retaliation claim. Okay, but it doesn't concern ERISA. So, I mean, ERISA is the only thing that you get federal subject matter jurisdiction over, right? Correct. What was the retaliation for? The retaliation, as he states, as stated in the complaint, is that in retaliation for complaining about the alleged assault and battery of Mr. Veltri, Ohio Northern University deprived him of certain employment benefits. Okay, just wanted to be clear about that. Again, this is what the analysis the judge has to make at the time of removal. We now have the benefit of hindsight looking at an assault and battery claim against an individual on one hand and an ERISA claim against the employer at university on the other hand, and throughout the period of time from removal until the actual trial. I don't see the connection other than the defendant that remains in the case works for the university. The defendant was a totally separate claim. I believe that it would be difficult, if not impossible, for a court to resolve the retaliation claims without resolving also the employment benefit claims and the assault and battery claims. Retaliation has nothing to do with ERISA. It has to do with other benefits, other things of employment, I guess. I mean, without the ERISA claim, you wouldn't have been able to remove simply based on the assault and the retaliation for complaining about the assault. Correct. Correct, but there was the ERISA component. The retaliation claim says employee benefits, employment benefits. Let me press you a little bit on this question about do we only look at the time of removal, whether you call it jurisdiction or abuse of discretion. Suppose a person makes a well-pleaded complaint, says I had protected activity, they retaliated against me by denying my ERISA benefits and other stuff happened. Okay. On its face, it's removed, there's no motion. Then it develops that the time sequence is such that it couldn't have been in retaliation. Is the law such that you can't look at that at all? You have to go ahead and say you have jurisdiction even though as a matter of absolute fact, there can't be any connection? I believe at that point we're probably getting then into subsection C of the statute, which is the discretionary permissive grounds upon which the trial court could then at that point step back and say, okay, we've been through enough discovery, we're far enough down this road, that I'm still not seeing the actual causal connection, the common nucleus of operative facts between this entire universe of employment-related claims. At this point... The reason I'm a slight odd is when you talk about common nucleus of operative facts, a short and simple statement in a complaint usually doesn't have very many operative facts. Unfortunately, that's the determination that Judge Zuhari had to make at the time of removal based upon the face of the complaint as drafted. He's not in a position and wouldn't have been able to after having the benefit of a whole lot of discovery and there was really no briefing on the topic at the time. It was not something that the plaintiff ever objected to, that it appeared obvious and evident to all the parties involved that this was a comprehensive airing of employment-related grievances against not only the university for retaliation, breach of his employment contract, but also individual claims against not only Mr. Veltri but also a number of other administrators at the university, including Mr. Veltri, three current or former deans of the university were sued individually, as well as the director of human resources, that this was a shotgun complaint all related to, all connected with, and all tied into his displeasure with his employment situation. I'd like to move on then, I guess, to the continuance issue that this court's already brought up, that this case is substantially distinguishable from the Anderson case. I'm sure it's not been lost on this court that Mr. Gerber himself is an attorney. He's a law professor. He has practiced law. He's had clerkships. Throughout the course of this case, from the time it was initially filed in 2013, he's now on his fifth counsel at various points of time. He has proceeded pro se at various points of time. He has had attorneys. While proceeding pro se, he has filed nearly a dozen different pleadings and motions, including motions for summary judgment, motions for reconsideration, issued and served subpoenas. In representing himself at trial in May, he himself examined and cross-examined a dozen witnesses. He introduced 73 exhibits. What's the point of this, that there's no prejudice? There is no prejudice. We have an old adage that an attorney who represents himself has a fool for a client. There's a reason for that, isn't there not? There is. Even though a lawyer who wants to represent himself may know the law, it's not a good idea. We all recognize that, right? It may or may not be a good idea. Which means that there's probably prejudice, probably likely prejudice, if a lawyer tries to represent himself. Because his judgment's impaired, I think, because he's too involved in the case. That could be the fact. I think you'd have to analyze on a case-by-case basis whether or not an attorney is able to competently represent himself. I think there's prejudice because I think it's not a good idea for even an attorney to do it himself. Let's get past that and tell me why it's not an abuse of discretion under these circumstances, whether or not he's an attorney. The trial court has discretion in granting or denying a motion for continuance. It has to obviously look at a set of circumstances here that were markedly different than the Anderson case when it was held that a trial court did abuse its discretion in denying a motion of continuance to a pro se litigant. Here we had six weeks. We had 43 days from the time Mr. Piggott withdrew until the trial date was set. The court repeatedly advised Mr. Gerber that if you hire a new attorney, I will certainly consider the issue of a continuance, but I believe that you have ample time, six weeks. Is it on the record that he tried to hire this attorney after the, I guess, the mistrial where his attorney had the? Mr. Gerber stated on the phone during one of these conferences that he had spoken with an attorney who was not willing to take the case. When was that? I believe that would have been in April. It is either the April 6th call or the, I believe, March 21st. Was that his only effort to get an attorney? I mean, I'm not sure that's good faith if you only contact one attorney, but is that what he said? I've contacted one attorney. Did he give a name or? He did not give a name. I believe he identified that she was a female attorney. He did not make any other reference to any other attempts to retain new counsel. I'm not sure that's a good faith effort if he only reaches out to one attorney and then says, I can't get anybody because I contacted one attorney and she didn't want the case. She said she did, or at least the statement was that she would do it if there was a continuance. So the kind of the issue is you've got this kind of masking. As I read the record, and it's at 5953 is the page ID, he does say that the lawyer doesn't want to have happen to them what happened to Piggott, who didn't get the continuance, sort of doesn't say that she'd be, I didn't read it as saying that she'd be stuck with it. Maybe he implies that she'd have an ethical obligation. I don't know. I don't know whether you've read the record any differently. I have. He did seem to have an allegedly known but unnamed lawyer, but who wanted assurance before being named and entering what the result would be. Is that a fair reading? Mr. Gerber represented that he had an unnamed attorney who would not come into the case without the court granting a continuance before the appearance. As this panel noted earlier, Mr. Piggott never filed a motion for continuance with the court. What day was this, by the way, this conference? Which conference? This happened over the telephone? The April 6th conference was by telephone, yes. And that's where he said he has this lawyer who doesn't want to get stuck, basically. Yes, Your Honor. What was the court's response? That if you have an attorney that's interested in taking this case, have them contact the court and request a continuance and we will see what we can do. File a motion too, right? What's that? File a motion? I don't know if he said to file a motion. That would have been my interpretation. You need to file a motion for continuance rather than just have a talk about it. Correct, Your Honor. And that certainly is the procedurally appropriate way to do it. That's what you appeal, the denial of a motion for continuance. Correct. Mr. Gerber filed a motion for continuance. To be fair, as I understand it, as I read the record at 5950, the judge makes these statements about if a new counsel enters an appearance and if the new counsel believes a continuance is needed, the court will, of course, entertain that. And it's a few pages on, almost at the end, I think, or at a later time that he makes this statement about she doesn't want to have happen to them what happened to Piggott. And I did not see that the judge then made another round of discussion after that at 5953. Is that fair? That is fair, Your Honor, yes. Again, there was never a motion filed by Mr. Piggott requesting a continuance. And 43 days, unfortunately, is often far more time than attorneys have to prepare for a case, let alone a discrete assault and battery case with no witnesses, no physical evidence whatsoever, a true he said, he said, as to one gentleman putting his left hand on another gentleman's right shoulder and saying, Scott, we need to talk, that whether or not six weeks is an appropriate amount of time for counsel to prepare to try that case. So was it six weeks? It was from April 4th to May 5th? It was April 6th was the phone conference that we're referencing here. But I believe it was March 21st when Mr. Piggott withdrew from the matter and in his motion to withdraw requested on behalf of his client at that time this continuance. Piggott withdrew and was granted on March 21. That's where you're getting the 43 days. Then Gerber makes a motion on March 30, which does mention the new lawyer. Then the 4-6 is an oral discussion with respect to that March 30th motion. Is that right? Yes. And that was a motion to continue? That was, I believe, a comprehensive motion to continue, also for the judge to recuse himself, and I believe also to allow a specific witness to testify at trial. But included in that was the motion to continue? I believe so, yes, Your Honor. Yes. Thank you, Your Honors. I appreciate it very much. Your Honor, the entry I've been looking for is the April 7 order by Judge Zuhari, which is at docket number 135. This order was filed April 7, and it is two and a half pages and sets up the trial schedule. And it does answer many of the questions particularly Judge White asked about these issues. There were three in the order the judge considered the motion to withdraw from Piggott, who, after all, had only asked for that on March 21st. And he, of course, allowed Mr. Piggott to withdraw. And telling in this whole question of, frankly, abusive discretion, is in that motion to withdraw, Judge Zuhari also talks about that the court has in the past and is now allowing plaintiff necessary time to obtain substitute, his fourth counsel. I noticed Mr. Kinsey just mentioned his fifth counsel. Well, they're both wrong. This would have been his third. Only one, they had a parting of the ways, the original one, before trial. The other one has a seizure, so he is asking for his third attorney. And this goes to Judge Zuhari's opinion and is consistent with a lot of his findings, both on the seventh and later in August on the final decision. He says, but it is well settled that there is no constitutional right to counsel in civil cases. And he doesn't cite Anderson v. Shepard, the law. He cites Fanfalone v. City of Detroit, which is an unpublished opinion, and which, frankly, isn't applicable because in Fanfalone, the plaintiff was complaining that he had ineffective assistance of counsel in his civil case and ought to be allowed to have a new trial for that reason. Well, of course, if there is ineffective assistance of counsel, you get a new appointed criminal case. But why Judge Zuhari wouldn't go with the standard Anderson v. Shepard isn't explained. And, of course, he then goes on in the April 7 order to refuse to recuse himself. And he discusses the continuance issue, and that's where the language, most of the questions you're asking about this conversation in April and the hearing and his decision on April 7 are here. In the motion for continuance is when the judge talks about his usual practice, that the court will do what it has done in the past, which is to allow new counsel for a plaintiff upon entering an appearance, an opportunity to bring her or himself up to speed on the case. The court will have a discussion. Well, the attorney, the third attorney, had no what happened to Tom Piggott. He entered the appearance. He made the ask for a motion and was told no. Now, she's not going to put herself on the hook unless she knows that can happen. Now, could she have made an off-the-record phone call to the judge and said, hey, can you? But the judge refused to give any indication whether or not he would. And having happened once before, no good lawyer is going to want to get involved in it. Well, why is – I mean, I know lawyers have a lot of cases, but why is a month not enough on a simple assault and battery? Because the clients involved, the witnesses involved, and what's gone on beforehand, not anything connected with the ERISA claim, but there's a lot to wade through. And 33 days is not sufficient time. And the trial itself, when they had it, when they started it in January with Tom Piggott, was in its second day. And this is a bench trial. We didn't have to pick a jury. It's in the second day before he has the seizure. There were a lot of witnesses and there's a lot of prior statements, et cetera. It happened in 2012, and there were other things that happened after that. So 33 days is not enough for this. Let me go back to this sort of standoff. I mean, I don't know that it was really that clear of a standoff, but now that we're looking at it, it seems to be the judge is saying, enter an appearance, make a motion, and I'll rule on it. And Gerber, at least on behalf of the unnamed attorney, is saying, no, no, you make a ruling first, and then I'll enter a motion, enter an appearance. And is there any law that says that your right to counsel lets you tell the judge to rule in advance? Certainly not. It's certainly not that clear. Where you can determine that there's a denial of a right to counsel, you can determine that, however, when the judge is hurrying the process along, that's an effective de facto denial to retain private counsel. And in this case, he did. And, of course, it wasn't framed that way. The way it was framed to the judge is, I've got an attorney, not I'm looking for one. Did he only look for one? He said, I got one. She'll do it, but she's got to know that she has time to prepare for it, and she's not going to introduce it. The other issues in this case, the right to counsel issue, in his final decision, Judge Zuhari also mentions, as did Mr. Kinsey, that Scott Gerber is a lawyer. Scott Gerber is a law professor, a constitutional historian, and a writer. He appeared at these hearings, and anybody reviewing how he handled himself in this case would concur with the old admonition that if he truly wanted to represent himself, he has a fool for a client and an idiot for a lawyer. But in this case, he wanted an attorney. He didn't want to rent himself. He didn't want to. He knew enough about that. Mr. Hoffman, I think you're out of time. Any further questions? Judge Boggs, Judge White. Thank you very much. Thank you very much for your arguments. The case will be submitted. We'll call the next case.